IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BYRON A. BOWIE, JR. | * | |
| #221-505 | * | |
| Petitioner | * | |
| | * | |
| v. | * | Civil Action No. L-04-1943 |
| | * | |
| JAMES V. PEGUESE, Warden, *et al.* | * | |
| Respondents | * | |

**MEMORANDUM**

Now pending is Byron A. Bowie's ("Bowie") Petition for Writ of Habeas Corpus. Because the issues are clear, a hearing is unnecessary. Local Rule 105.6 (D. Md). For the reasons stated herein, the Court will DENY the Petition and DIRECT the Clerk to close the case.

**I. Background**

    **A. Facts**

On the night of September 28, 1990, James Dennis and Nabeel Iskander left work at a pizza parlor in Walkersville, MD and headed to a neighborhood bar. As they walked from Iskander's vehicle in the direction of the bar, they were approached by several unknown men. Asked if they wanted to buy drugs, Iskander and Dennis declined. Iskander then told Dennis that he was returning to his car and driving home, and that Dennis would need to hail a taxi from the bar if he wanted to stay. As Iskander turned to walk to his vehicle, Dennis continued towards the bar.

A few seconds later, both Dennis and Iskander were shot. Dennis suffered a fatal wound to the chest. Iskander was also wounded, but suffered no internal injuries.

Upon arriving at the scene, police investigators were told by eyewitnesses Annette Boyd, Paula Waggoner, Sherry Jackson, and Kenya Diggs that petitioner Bowie, who was fourteen years old at the

time, was the shooter.[1]  Another witness, Tyshika Carter, told police that Bowie had asked her whether she had "seen anything," and whether "the white guy had died." [2]

Approximately four months later, on January 3, 1991, Welman Nash, an acquaintance of Bowie's, told the police that Bowie had asked him to kill the witnesses.[3]  Nash also said that Bowie again asked him to kill the witnesses when he visited Bowie in prison.[4]

**B. Procedural History**

On October 29, 1990, Bowie was charged in a nine-count criminal information with the following offenses: (i) first degree murder; (ii) attempted murder; (iii) use of a handgun in commission of a crime of violence; (iv) reckless endangerment; (v) assault; (vi) battery; (vii) wearing a handgun; (viii) carrying a handgun; and (iv) transporting a handgun.[5]  On April 9, 1991, in a "reverse waiver hearing," the Honorable G. Edward Dwyer, Jr., sitting in the Circuit Court for Frederick County, declined to waive jurisdiction in favor of juvenile court. See Md. Code Courts & Jud. Proc. §§ 3-801(e)(1), 3-804(e)(1) (1989 Repl. Vol., 1991 Supp.).[6]

---

[1] State Ex. 4, pp. 29-33.  Boyd later recanted her statement. State Ex. 5, pp. 19-20, 31.

[2] State Ex. 24, p. 7.  Carter was Bowie's girlfriend.

[3] State Ex. 2, p. 48. The witnesses were Keyana Diggs, Sherry Jackson, and Tyshika Carter.

[4] State Ex. 4, p. 34.

[5] State Ex. 1.

[6] Criminal actions may be transferred to juvenile court in cases where the defendant has reached fourteen years of age but is under eighteen if transfer is deemed in the interests of the child or society. See In re Franklin P, 366 Md. 306 (Md. 2001); Maryland Code, Art 27 § 594A (1987 Repl.Vol., 1991 Supp.). The factors considered in determining waiver are: (i) age; (ii) mental condition; (iii) physical condition; (iv) amenability to treatment; (v) nature of the offense; and (vi) public safety.

On July 3, 1991, Bowie entered a technical plea of not guilty[7] with an agreed statement of facts.[8] Before the plea was entered, Judge Dwyer conducted a lengthy colloquy to ensure that Bowie understood the consequences of his decision. Thus satisfied, Judge Dwyer ruled that the agreed statement of facts showed beyond a reasonable doubt that Bowie was guilty of first degree murder, assault to with intent to murder, and using a handgun in the commission of a crime of violence, *i.e.*, murder.

Pursuant to the plea agreement, Deputy State's Attorney Donald Grossnickle reduced the attempted murder charge to assault with intent to murder. He also agreed to dismiss the remaining charges of reckless endangerment, assault, battery, wearing a handgun, carrying a handgun, and transporting a handgun. Grossnickle further agreed not to charge Bowie with attempting to kill eyewitnesses to the crime.[9] Finally, Grossnickle recommended that the court impose a maximum life sentence on the murder charge, to be served concurrently with the sentences imposed for the assault

---

See id. Based on careful examination of these factors as applied to the facts of Bowie's case, Judge Dwyer declined to waive jurisdiction.

[7] By entering a technical plea of not guilty, Bowie ensured his right to appeal Judge Dwyer's refusal to waive jurisdiction in favor of the juvenile court. Had Bowie entered a guilty plea, he would then have been required to file an application for leave to appeal, the granting of which is subject to the discretion of the trial court. See Maryland Code Ann., Courts Art., § 12-302(e); Maryland Rule 8-204(b).

[8] "Under an agreed statement of facts both State and the defense stipulate as to the ultimate facts. Then the facts are not in dispute, and there can be by definition no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon." Barnes v. State, 31 Md. App. 25, 35 (1976).

[9] State Ex. 4, pp. 4-5.

and weapons charges.[10]

Before his sentencing on January 23, 1992, Bowie moved for a new trial on the grounds of ineffective assistance of counsel.[11] Judge Dwyer denied the motion. He then sentenced Bowie to life imprisonment for first degree murder, fifteen years for assault with intent to murder, and ten years for use of a handgun in commission of a crime of violence, *i.e.*, murder.

### i. First Appeal

After noting a timely appeal, Bowie argued that Judge Dwyer erred in denying his motion for a new trial.[12] On October 28, 1992, the Maryland Court of Special Appeals affirmed Judge Dwyer's decision, stating in part:

> Appellant and trial counsel's joint decision to proceed upon this arrangement, regardless of the inconsistencies, does not seem unreasonable under prevailing professional norms, nor does appellant appear to be adversely affected by that decision. Upon reviewing the record under the Strickland standard, we find no facts that would compel the Court to reverse the trial court's order denying appellant's motion for a new trial.[13]

---

[10] See id.

[11] Bowie was originally represented by Alan Winik, a privately retained attorney. Winik was replaced by Assistant Public Defender Franklin Stillrich, who represented Bowie when he entered his technical plea of not guilty. Stillrich was in turn replaced by Kenneth Ravenell, who handled Bowie's Motion for a New Trial and first appeal. Assistant Public Defender Lindsay S. White took over for Ravenell at Bowie's first state post-conviction hearing. Bowie was then represented by Martha Weisheit, also an Assistant Public Defender, on his second appeal. State Ex. 19, pp. 1-7.

[12] Although ineffective assistance claims are usually considered on collateral review, Ravenell argued that it was proper for the Court of Special Appeals to consider whether Stillrich was inefffective because the issue had been fully explored in the hearing on Bowie's motion for a new trial. State Ex. 8, p. 1.

[13] State Ex. 8, pp. 4-7.

Bowie did not seek review in the Maryland Court of Appeals.

### ii. First Post-Conviction Petition

On July 21, 1999, Bowie filed for post-conviction relief, claiming that (i) his technical plea of not guilty was unknowing and involuntary; (ii) appellate counsel Kenneth Ravenell was ineffective; and (iii) trial counsel Franklin Stillrich was ineffective. Bowie also alleged misconduct on the part of Judge Dwyer and Deputy State's Attorney Grossnickle.

On March 2, 2001, The Court of Special Appeals held that Ravenell was ineffective for failing to appeal the trial court's reverse waiver decision.[14] According to Judge Tisdale,

> Appellate counsel must raise and properly argue the relevant issues. ...  Mr. Ravenell failed to raise the fundamental issue of the reverse waiver to the prejudice of the Petitioner. Had the Petitioner been tried as a juvenile, the impact of being found guilty of this crime would have been significantly different than the outcome of being tried as an adult. The failure of appellate counsel to raise the [reverse waiver decision] precluded review of an issue which was seemingly contemplated to be considered on appeal, and is sufficiently prejudicial to require that Petitioner be granted an opportunity to appeal the issue of failure to grant the reverse waiver.[15]

### iii. Second Appeal

On his second appeal, Bowie argued that Judge Dwyer abused his discretion by refusing to waive jurisdiction in favor of the juvenile court and that the agreed statement of facts was insufficient to support a conviction for first degree murder.[16]  The Court of Special Appeals rejected both arguments

---

[14] Bowie's other claims were denied.

[15] State Ex. 19,  27-28. The Court of Special Appeals summarily denied Bowie's subsequent application for leave to appeal denial of his remaining claims.

[16] State Ex. 22, p. 2.

5

on July 9, 2002, and the Maryland Court of Appeals of denied Bowie's petition for writ of certiorari.

### iv. Second Petition for Post-Conviction Relief

In his second petition for post-conviction relief, Bowie claimed that (i) Judge Dwyer abused his discretion by presiding over the reverse waiver hearing, suppression hearing, and entry of the plea; (ii) Kenneth Ravenell, counsel on his first appeal, was ineffective; and (iii) Martha Weisheit, counsel on his second appeal, was ineffective.[17]

On October 16, 2003, Judge Tisdale denied Bowie's second petition. Bowie filed for leave to appeal Judge Tisdale's ruling on grounds of ineffective assistance of counsel, but his application was denied by the Court of Special Appeals on April 26, 2004.

## II. Standard of Review

### A. Deference to State Court Ruling

Federal habeas review of state court decisions is governed by the deferential standard set forth in 28 U.S.C. § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). That provision states that federal habeas relief is available only when the state adjudication:

> (i)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or
>
> (ii)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).[18]

---

[17] State Ex. 26 & 27.

[18]The habeas statute accords deference to "the determinations of state courts[,] provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams

Pursuant to 28 U.S.C. § 2254(e), state court findings of fact are presumed correct on federal habeas review, and will only be disturbed upon a showing of clear and convincing evidence.

**B. Ineffective Assistance**

Ineffective assistance of counsel claims are governed by the two-pronged standard announced by the Supreme Court in Strickland v Washington, 466 U.S. 668 (1984). To establish ineffective assistance, a claimant must show (i) that counsel's performance was deficient, and (ii) that counsel's deficient performance prejudiced his defense. Id. at 687. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. In addition, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689.

In the context of a 28 U.S.C. § 2254 proceeding, a petitioner must "do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance." Bell v. Cone, 535 U.S. 695, 698-99 (2005). Instead, the prisoner must show that the state court applied Strickland to the facts of the case in an objectively unreasonable manner. Id.

**III. Analysis**

---

v. Taylor, 529 U.S. 362, 386 (2000). Consequently, "state-court judgments must be upheld unless after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." See id. at 387. A federal habeas court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." Id. at 411; see also Bell v. Cone, 543 U.S. 447, 455 (2005) (observing that the federal habeas statute "demands that state court adjudications be given the benefit of the doubt.").

In this § 2254 petition, Bowie claims that (i) trial counsel Franklin Stillrich was ineffective; (ii) Kenneth Ravenell, counsel at his first appeal, was ineffective; and (iii) Martha Weisheit, counsel at his second appeal, was ineffective. Bowie also claims that Judge Dwyer and Deputy State's Attorney Grossnickle engaged in misconduct.

### A. Bowie's Claims that Stillrich was Ineffective

Bowie faults Franklin Stillrich, his trial counsel, for: (i) meeting with him only twice; (ii) advising him to enter a technical plea of not guilty on an agreed statement of facts; (iii) failing to move for Judge Dwyer's recusal; (iv) failing to properly investigate the case; and (v) failing to object to an alleged misstatement at sentencing by Deputy State's Attorney Grossnickle.

### i.  Claim that Stillrich Met with Bowie only Twice

In denying Bowie's first petition for post-conviction relief, Judge Tisdale acknowledged that the law requires adequate consultation between a defendant and his attorney. See, e.g., United States v. Cronic, 466 U.S. 648 (1984); Slatter v. Warden, 241 Md. 668, 675 (1966). Counsel is not required, however, "to engage in a particular number of interviews[,] or to speak with the defendant [for] some minimum amount of time." State Ex., 9, p. 23.

Judge Tisdale credited Stillrich's statement that he met with Bowie "a minimum of six or seven times."[19] He also accepted Stillrich's explanation as to why the prison visitor register contained only two entries for his visits to Bowie - namely, that he often signed the register for one client, but met with several others once inside.[20] Based on the record before him, Judge Tisdale concluded that Stillrich met

---

[19] State. Ex. 17, p. 174.

[20] State Ex. 17, p. 178.

8

with Bowie a sufficient number of times and provided adequate representation.

The Court finds Judge Tisdale's determination amply supported by the record. His decision was neither contrary nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. State court findings of fact are entitled to a presumption of correctness, and Bowie has failed to rebut this presumption by clear and convincing evidence. Consequently, there is no cause to award federal habeas relief and Bowie's claim will be denied.

### ii. Claim that Stillrich Caused the Plea to be Entered Unknowingly and Involuntarily

Bowie next alleges that Stillrich "tricked" him into entering a technical plea of not guilty on an agreed statement of facts. He therefore contends that his plea was unknowing and involuntary.[21]

Relying on the plea colloquy transcript and the testimony presented at Bowie's first post-conviction hearing, Judge Tisdale determined that Bowie was questioned extensively to ascertain (i) whether he understood the charges against him; (ii) whether he understood the minimum and maximum sentences he was facing, including life in prison for first degree murder; (iii) whether he had reviewed the charges with Stillrich; and (iv) whether he understood he was giving up his right to a trial.[22] Judge Tisdale further noted that the colloquy transcript showed that Mr. Stillrich had met with Bowie's family to discuss the case, that Bowie's father attended the colloquy, and that Bowie told Judge Dwyer that he

---

[21] Petition, pp. 4c & 6h.

[22] State Ex. 19 p. 10-15 (quoting colloquy transcript)

had been given an opportunity to discuss the plea with his father.[23]

At his first post-conviction hearing, Bowie testified that he had answered "yes" to the questions posed to him during the colloquy only because Stillrich had instructed him to do so. Judge Tisdale found this testimony unpersuasive, observing that at least one time during the colloquy, Bowie informed Judge Dwyer that he did not understand a question, and that Judge Dwyer rephrased the question to provide a better explanation.[24]

In light of the evidence before him, Judge Tisdale determined (i) that Bowie entered his plea after having been properly advised of his rights; (ii) that the plea proceedings were conducted in a manner consistent with Bowie's age and intelligence level; and (iii) that Bowie had entered his plea freely and voluntarily.[25] Accordingly, Judge Tisdale rejected the argument that Bowie had been "tricked" into entering his plea.

Judge Tisdale also concluded that Bowie failed to advance clear and convincing evidence that the entry of the plea did not amount to sound trial strategy. By entering a technical plea of not guilty with an agreed statement of facts, Bowie preserved his right to appeal the trial court's refusal to waive jurisdiction in favor of the juvenile court. Furthermore, Bowie also secured the state's agreement to forbear pressing charges against him for threatening witnesses, to recommend a single instead of a double life term, and to dismiss the remaining charges in a case where there was ample evidence to

---

[23] State Ex. 19, p 12, 15.

[24] State Ex. 4, p. 15.

[25] State Ex. 19, p.16.

sustain additional convictions.[26]

The Court finds that Judge Tisdale's ruling is objectively reasonable and well-supported by the record. State court findings of fact are presumed correct on federal habeas review, and Bowie has failed to rebut this presumption by clear and convincing evidence. Given the eyewitness testimony against Bowie, Judge Tisdale's decision was neither contrary to nor an unreasonable application of Strickland's two-pronged test.[27] Accordingly, federal habeas relief as to this claim is denied.

### iii. Claim that Stillrich Failed to Move for Judge Dwyer's Recusal

Bowie contends that it was improper for Judge Dwyer to preside over both the reverse waiver hearing and the entry of his plea. Accordingly, he argues that Stillrich was ineffective for failing to request that Judge Dwyer recuse himself from the latter proceedings.[28]

Judge Tisdale examined and rejected this claim in connection with Bowie's first post-conviction petition. In the absence of any legal authority requiring Stillrich to request another judge, Judge Tisdale determined that Bowie had "failed to meet his burden of showing there was a deficient act, which is the first prong of the Strickland test." [29] As for the second prong of the test, i.e., actual prejudice, Judge Tisdale concluded that Bowie had failed to establish that he would not receive a fair plea colloquy with Judge Dwyer presiding.

Judge Tisdale also analyzed Bowie's claim by referring to Md Rule 4-342(c), which provides:

---

[26] See id. p. 22.

[27] See Strickland, 466 U.S. at 689.

[28] Petition. p. 6A22.

[29] State Ex. 19, p.20.

11

> If a defendant enters a plea of guilty or nolo contendere before trial, any judge may sentence the defendant EXCEPT that, the judge who directed entry of the plea shall sentence the defendant if that judge has received any matter, other than a statement of the mere facts of the offense, which would be relevant to determining the proper sentence. (emphasis added).[30]

Judge Tisdale explained:

> The basis for this Rule is that the judge who presides at the trial of a criminal case has the unique opportunity to form conclusions as to the severity of the crime, the veracity of the witnesses, the demeanor of the defendant, and the truthfulness of the defendant where he chooses to testify, all of which are important to the imposition of a just sentence. Summers v. State, 41 Md. App. 489, 397 A. 2d 286 (1979).
>
> In the Petitioner's case, Judge Dwyer had already received matters other than just the statement of facts, because he presided over the reverse waiver hearing. Having additional information on the Petitioner moved the issue of Judge Dwyer presiding over [] Petitioner's plea squarely into Rule 4-342(c). The law makes it clear that there was not judicial misconduct in having Judge Dwyer preside over the Petitioner's plea as well as new trial/sentencing hearing. In fact, the law mandated Judge Dwyer to preside in such a manner.[31]

Bowie has failed to show that Judge Tisdale applied Strickland to the facts of his case in an objectively unreasonable manner. An attorney's decision not to file a motion, in this instance a motion for recusal, that is devoid of merit cannot constitute ineffective assistance of counsel. See Jones v. Barnes, 463 U.S. 745, 754 (1983). Accordingly, Bowie's claim establishes no basis for relief and will be denied.

**iv.     Claim that Stillrich Failed to Investigate**

Bowie also contends that Stillrich was ineffective because he failed to investigate his theory that a

---

[30] State Ex. 19, p. 30

[31] State Ex. 19, p 31.

man "Jamaica James" was the true shooter.[32] Judge Tisdale rejected this claim in Bowie's first post-conviction petition.

Judge Tisdale credited Stillrich's testimony at the first post-conviction hearing attesting that he had investigated Bowie's theory and had located a "James Johnson." Johnson, however, could not have been the shooter because he was incarcerated at the time of the shooting. Stillrich also testified that he found a "Jamaica Bobby," but was unable to find anyone named "Jamaica James." Based on this testimony, Judge Tisdale concluded that Stillrich had conducted a careful, reasonable investigation of the facts to evaluate the merits of Bowie's defense.[33] Reasoning that Stillrich was not required to perform "the impossible" and locate a phantom shooter,[34] Judge Tisdale determined that Bowie had failed to meet either prong of the Strickland test and rejected his ineffective assistance claim.

The Court finds Judge Tisdale's decision well-supported by the record. Because Bowie does not allege what more Stillrich could have done to locate "Jamaica Bobby," Judge Tisdale's rejection of his ineffective assistance claim was not contrary to or an unreasonable application of clearly established federal law. Similarly, Judge Tisdale's conclusion that Stillrich conducted a reasonable investigation is presumed correct on federal habeas review, and Bowie has failed to rebut this presumption by clear and convincing evidence. The court will therefore deny his claim for relief.

### v. Claim that Stillrich Failed to Object to Prosecutor's Alleged Misstatement at Sentencing

---

[32] Petition at 6Z14.

[33] See Kimmelman v. Morrison, 477 U.S. 365 (1986).

[34] Citing to Gilliam v. State, 331 Md. 651, 668 (1993).

Bowie next faults Stillrich for failing to object to an alleged misstatement by Deputy State's Attorney Grossnickle at his sentencing. In response to Bowie's argument that "Jamaica James" was actually the shooter, Grossnickle argued to Judge Dwyer that "[Bowie's claim] really doesn't work very well because that person was incarcerated at the Detention Center on the date [the shooting] happened."[35] As related above, however, Stillrich had already determined that "Jamaica James" and James Johnson - the incarcerated individual to whom Grossnickle referred - could not be the same person. Under Bowie's theory, therefore, the incarceration of James Johnson was irrelevant. Bowie faults Stillrich for failing to object to a statement that he knew was inaccurate.[36]

There are several answers to Bowie's argument. First, the notion that "Jamaica James" or anyone other than Bowie was the shooter is inconsistent with the agreed statement of facts. Moreover, Stillrich's investigation failed to uncover any facts that would support Bowie's belated attempt to attribute the shootings to someone other than himself. Finally, Judge Dwyer ultimately sentenced Bowie in accordance with the plea agreement. Grossnickle's statement at sentencing therefore had no prejudicial effect on Bowie's conviction or sentence. Absent such a showing, Bowie cannot demonstrate ineffective assistance under Strickland. There is no basis here for federal collateral relief.

**B. Ineffective Assistance on First Appeal**

Bowie claims that Kenneth Ravenell, counsel on his first appeal, was ineffective for failing to attack his plea.[37] Judge Tisdale reviewed and rejected this claim in Bowie's first petition for post-

---

[35] State Ex. 5, p. 47-48.

[36] See id.

[37] Petition, p. 4B.

conviction relief:

> The Court of Special Appeals reviewed one issue on appeal, which was "[w]hether the circuit court erred in denying appellant's motion for a new trial based on a claim of ineffective assistance of counsel." State of Maryland v. Byron Alton Bowie, No. 287 (Court of Special Appeals of Maryland[,] filed October 28, 1992). The Petitioner's appellate counsel argued that the new trial should have been granted [] because of the ineffective performance of Petitioner's trial counsel. In truth, the majority of the issues that the Petitioner is raising now in his Post Conviction have already been reviewed and decided by the Court or the Court of Special Appeals. Mr. Ravenell thoroughly argued the inconsistencies that existed in the case, which were not presented at the plea hearing. Mr. Ravenell also argued in the appeal that the Petitioner's trial counsel [Mr. Stillrich] was ineffective for not raising those inconsistencies.[38]

In fact, Judge Tisdale noted, Ravenell thoroughly presented inconsistencies in witness statements at the hearing for a new trial and in his first appellate brief. In light of these findings, augmented by the extensive plea colloquy conducted to ensure that Bowie's plea was knowing and voluntary, Judge Tisdale declined to hold that Ravenell was ineffective.

The Court concludes that Judge Tisdale's ruling was neither contrary to nor an unreasonable application of the Strickland standard for ineffective assistance of counsel. Nor was the ruling was based on an unreasonable determination of facts in light of the evidence presented to the state court. Contrary to Bowie's assertions, the record shows that Ravenell attacked Bowie's plea, albeit unsuccessfully. Accordingly, Bowie's claim provides no basis for federal habeas relief and will be denied.

**C. Ineffective Assistance of Appellate Counsel on Second Appeal**

Bowie next argues that Martha Weisheit, counsel on his second appeal, was ineffective for failing to argue (i) that the evidence was insufficient to support a conviction for first degree murder, and (ii) that

---

[38]State Ex. 19, p. 26.

the State withheld inconsistent statements by key eyewitnesses.[39]

Contrary to Bowie's assertions, Weisheit did in fact challenge the sufficiency of the State's evidence. In her appellate brief, she emphasized that witness Annette Boyd told the police that Bowie and the victim "appeared to have words." Boyd further testified that as the argument progressed, Bowie pulled out a gun and shot the victim. Under these circumstances, Weisheit argued that the State could not establish the requisite premeditation for first degree murder.[40]

As Judge Tisdale noted in denying Bowie's second petition for post-conviction relief, the Court of Special Appeals specifically addressed - and rejected - Weisheit's argument on the question of premeditation.[41] Accordingly, Judge Tisdale denied Bowie's claim that Weisheit was ineffective for failing to challenge the sufficiency of State's evidence.[42]

Bowie also claims that Weisheit was ineffective for failing to argue that the State withheld three statements by witness Annette Boyd. According to Bowie, Boyd testified (i) that a police officer offered to pay for repairs to her broken purse strap; (ii) that the officer encouraged her "to stay with her story with regard to B.J. and him having possession of the gun";[43] and (iii) that Boyd was unsure whether she

---

[39] See Petition, pp. 6Z24-6Z33.

[40] State. Ex. 22, pp. 15-16. ("Because the facts presented in support of the plea indicate that the shooting was prompted by some disagreement between the two men and was impulsive as opposed to deliberate, the first degree murder conviction is unsupportable.").

[41] State Ex. 24, pp. 25-26.

[42] State Ex. 27, pp. 7-8.

[43] Bowie's nickname was "B.J." State Ex. 3, p. 11.

16

saw Bowie fire the gun.[44]

Judge Tisdale rejected a similar argument in Bowie's first petition for post-conviction relief, refusing to hold that trial counsel Franklin Stillrich was ineffective for failing to pursue the allegations set forth above. Emphasizing that Bowie relinquished his right to a jury trial by pleading not guilty and stipulating to an agreed statement of facts, Judge Tisdale found no evidence to substantiate Bowie's claims of improperly withheld statements.

On the record before him, Judge Tisdale determined (i) that Weisheit challenged the sufficiency of the State's evidence to support a conviction for first degree murder, and (ii) that Bowie had failed to established that the State withheld inconsistent statements by eyewitnesses. These findings are presumed correct on federal habeas review, and Bowie has not advanced clear and convincing evidence to the contrary. Accordingly, we uphold Judge Tisdale's conclusion that Weisheit raised the very argument Bowie faults her for failing to present, i.e., that the State had failed to show the requisite premeditation for first degree murder. In light of the record below, we also conclude that Weishet was not ineffective for failing to argue that the State improperly withheld eyewitness testimony. We therefore reject Bowie's claim that Weisheit was ineffective on his second appeal.

**D.  Prosecutorial Misconduct**

Bowie claims that Deputy State's Attorney Grossnickle engaged in misconduct by (I) failing to ensure that his plea was knowing and voluntary, and (ii) falsely stating that "Jamaica James" was incarcerated on the date of the shooting.

---

[44] Petition, p. 6Z29.

Assuming, *arguendo*, that Bowie's claim is not procedurally defaulted,[45] it nevertheless fails to provide a basis for federal habeas relief. As Judge Tisdale emphasized in denying Bowie's first post-conviction petition, "[t]he law does not require that the prosecution explain anything to petitioner when he is represented by counsel."[46] Accordingly, Grossnickle did not engage in misconduct by failing to ensure that Bowie's plea was knowing and voluntary.

As for the statement concerning "Jamaica James"'s incarceration, Judge Tisdale emphasized that Grossnickle made this remark at sentencing, long after the reverse waiver hearing and the entry of Bowie's plea. Moreover, Judge Tisdale determined that Bowie had failed to provide any evidence he was prejudiced by Grossnickle's comments.[47]

The Court finds that Judge Tisdale's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state proceedings. Deputy State's Attorney Grossnickle was under no obligation to ensure that Bowie understood the consequences of his plea agreement, and Bowie has not shown that he was actually prejudiced by Grossnickle's remark at his sentencing. Bowie's claim of prosecutorial misconduct is therefore denied.

**E. Judicial Misconduct**

Bowie finally claims that Judge Dwyer engaged in misconduct by presiding over the reverse waiver hearing, the entry of his plea, and the hearing on his motion for a new trial.

---

[45] The State asserts that this claim is procedurally defaulted because Bowie failed to raise it in his application for leave to appeal the denial of his first petition for post-conviction relief. State Ex. 28, pp. 44-47.

[46] State Ex. 19, p. 29.

[47] See supra, pp. 15-16.

In denying Bowie's first petition for post-conviction relief, Judge Tisdale determined that Judge Dwyer was under no legal obligation to recuse himself. He further observed that "the judge who presides at a criminal case is uniquely qualified to form conclusions concerning the severity of the crime, the veracity of witnesses, and the demeanor of defendant, all of which are important to the imposition of a just sentence."[48] "The law [Md. Rule 4-342(c)][49] makes it clear that there was no judicial misconduct in having Judge Dwyer preside over the Petitioner's plea as well as new trial/sentencing hearing," Judge Tisdale wrote. "In fact, the law mandated Judge Dwyer to preside in such a manner."[50] Notably, Bowie does not identify any reason why he could not or did not receive a fair hearing with Judge Dwyer presiding.

Judge Tisdale's ruling is amply supported by the record, and Bowie has failed to show that the state court applied the law to the facts of his case in an objectively unreasonable manner. Accordingly, his claim provides no basis to award federal habeas relief and will be denied.

**IV. Conclusion**

For these reasons, the Court will DENY the Petition. A separate Order follows.

Dated this 21st day of September 2007.

                                                                                 /s/
                                                  Benson Everett Legg
                                                  Chief Judge

---

[48] State Ex. 19, p. 31 (quoting Summers v. State, 41 Md. App. 489, 493 (1979)).

[49] See supra, pp. 13-14 (quoting Md. Rule 4-342(c)).

[50] State Ex. 19, p. 31.